IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

NICHOLAS AMBUSH,            )
                            )
          Plaintiff,        )   Civil Action No. 09-797
                            )   Judge McVerry
     v.                     )   Magistrate Judge Bissoon
                            )
BRIAN COLEMAN, *et al.*,    )
                            )
          Defendants.       )

# MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

## I. RECOMMENDATION

For the reasons stated below, it is respectfully recommended that Defendants' motion for summary judgment (Doc. 43) be granted, and Plaintiff's motion for summary judgment (Doc. 41) be denied. It is further recommended that the John Doe Defendants be dismissed. Finally, it is recommended that Plaintiff's motion for judgment on the pleadings (Doc. 54) be denied as moot.

## II. REPORT

Plaintiff Nicholas Ambush ("Plaintiff") is state prisoner currently incarcerated at the State Correctional Institution at Fayette ("SCI-Fayette") in LaBelle, Pennsylvania. Plaintiff brings this suit pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, *et seq.*, alleging violations of the Eighth Amendment to the Constitution of the United States by multiple Defendants. This suit commenced with the receipt of Plaintiff's initial complaint on June 22, 2009. (Doc. 1-1). Plaintiff was granted leave to proceed *in forma pauperis* ("IFP") on

June 25, 2009. (Doc. 4). Plaintiff filed an amended complaint on October 30, 2009. Am. Compl. (Doc. 29). Defendants filed an answer (Doc. 33) and a partial motion to dismiss (Doc. 31) on November 10, 2009. This Court granted in part and denied in part the motion to dismiss on June 24, 2010. (Doc. 40). Plaintiff filed a motion for summary judgment on September 9, 2010 (Doc. 41). Defendants responded thereto on September 16, 2010. (Doc. 46). Defendants filed a cross motion for summary judgment on September 15, 2010. (Doc. 43). Plaintiff responded to this motion on October 12, 2010 (Docs. 47 – 48). These cross-motions for summary judgment are ripe for disposition.

A. Relevant Factual History

Plaintiff alleges in his amended complaint that he was denied medical treatment for several hours when his right eyeball popped out of its socket on December 28, 2008, while he was sneezing and blowing his nose. (Doc. 29) at 3. This allegedly occurred at about 12:15 AM, and caused him extreme pain. Id. He called Defendants Kino and Comiskey from the intercom in his cell. These Defendants came to examine Plaintiff.

Defendants Kino and Comiskey admit that Plaintiff informed them that he had sneezed and his eye bulged or popped out. (Doc. 45) ¶ 4 – 5. They further admit that it was obvious from Plaintiff's appearance that there was something wrong with his eye. Id. ¶ 6. However, they aver that they had never before heard of the type of injury from which Plaintiff suffered and, while Plaintiff complained that he was in pain, he "did not appear to be in agony."[1] Id. ¶ 7 The record indicates that, sometime around 12:15 AM, Defendants Comiskey and Kino contacted the

---

[1] A photograph of Plaintiff, taken on December 28, 2008, sometime prior to his transfer to the emergency room, was submitted by Plaintiff with his brief in support of summary judgment. (Doc. 42-2) at 2. The photo depicts Plaintiff's face, and shows that his left eye is swollen shut.

2

prison medical department. Defendant Kino recalls telling the nurse who answered the call that "they had an inmate who has something wrong with his eye." Id. ¶ 9. The nurse asked whether the injury was life-threatening, to which Kino responded "that it did not appear to be . . . but there was definitely something wrong with the eye." (Doc. 45-1) 3. The nurse also asked whether Plaintiff could see, to which Defendant Kino replied "yes." Id. at 9. Defendant Kino was told that Plaintiff should sign up for sick call in the morning.[2] (Doc. 45) ¶ 16. Defendants informed Plaintiff of this assessment by the nurse. Id. ¶ 17. It is not contested that Plaintiff called Defendants Kino and Comiskey several additional times through the night regarding his injury, but they responded that there was nothing that they could do. Id. ¶¶ 18 – 19. At some point during the night, Defendants Kino and Comiskey contacted their shift commander, Defendant Longstreth, regarding Plaintiff's injury. He advised them to continue following the nurse's instructions. Id. ¶ 20. The record does not indicate that Defendant Longstreth ever spoke to Plaintiff, or examined his injury for himself.

The record shows that Plaintiff was examined at about 7:30 AM that same day by a nurse. Plaintiff reported that, on a scale of one to ten, the pain that he was experiencing was a five. Id. ¶ 25; see also (Doc. 45-2) at 8. This pain was described as sharp, and located around the left eye. (Doc. 45-2) at 8. Plaintiff also complained of blurred vision in his left eye, which was swollen shut. Id. The nurse referred Plaintiff to the prison physician. Id. Plaintiff was examined by a physician in the prison infirmary at about 11:30 AM. (Doc. 45) ¶ 27. At the time

---

[2] December 28, 2008, was a Sunday. Plaintiff avers that there would have been no sick call that day. Be that as it may, this would not have precluded Plaintiff from submitting a sick-call slip, and it is undisputed that he was seen by a nurse at 7:30 AM that day, and by a physician at or about 11:00 AM. Additionally, a declaration submitted by Plaintiff in support of the amended complaint indicates that, during the morning of December 28, 2008, Plaintiff was ordered to go to sick call. Ex. A. to Am. Compl. (Doc. 29) at 9.

3

of this examination, the doctor made the following observation regarding Plaintiff's eye: "left lid closed, globe extrudes from socket, complaint of diplopia."[3] Id. ¶ 28; see also (Doc. 45-2) at 12. Plaintiff was referred to the emergency room at the University of Pittsburgh Medical Center Presbyterian Hospital ("UPMC") for treatment. (Doc. 45-2) at 2. Plaintiff alleges that he was forced to wait until the noon prisoner count was completed before he was transported there. (Doc. 29) at 6. Plaintiff's medical records indicate that he was admitted to UPMC at 2:42 PM. (Doc. 45-2) at 23.

Plaintiff's medical records from his visit to the hospital indicate that he was diagnosed with a fracture of the "left medial orbital wall . . . with herniation of fat into the ethmoid air cells,[4] intraorbital air and proptosis."[5] Id. at 24. Plaintiff complained once again of diplopia; however, his vision was otherwise intact. Id. at 23. The record indicates that, at the time of this examination, Plaintiff suffered from "only mild pain." Id. He also denied "headache, neck pain or any further injuries or neurologic symptoms." Id. An ENT resident who examined Plaintiff "felt that there was nothing operative to do at [that] time." Id. at 24. Additionally, an ophthalmology resident opined that Plaintiff suffered "no visual impairment secondary to the orbital wall fracture[.]" Id. The attending physician opined at that point that Plaintiff's course of treatment would likely consist of antibiotics and decongestants. Id. at 27. Plaintiff was discharged at 6:40 PM, prescribed 400 milligram tablets of Motrin, and given instructions for

---

[3] Diplopia is commonly known as double vision. See The Merck Manual of Diagnosis and Therapy 874 (18th ed. 2006).

[4] The ethmoid air cells consist of small, irregularly-shaped spaces within the ethmoid bone. The ethmoid bone separates the nasal cavity from the brain, and is located between the two orbits. Vol. 2 CH-F, J.E. Schmidt, M.D., Attorneys' Dictionary of Medicine E-219 – E-220 (Matthew Bender).

[5] Proptosis, also known as exophthalmos, is the medical term for protrusion of the eyeball. The Merck Manual of Diagnosis and Therapy 876 (18th ed. 2006).

4

follow-up appointments and restrictions on physical activities like sports, lifting and stooping. Id. at 39. The record generally indicates that Plaintiff has presented at multiple follow-up visits with medical professionals since his injury.

B. Standard of Review

Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving party, the record indicates that ". . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The moving party bears the initial burden of identifying evidence that demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth ". . . specific facts showing that there is a genuine issue for trial . . ." or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The inquiry, then, involves determining "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990), *cert. denied*, 501 U.S. 1218 (1991) (quoting Anderson, 477 U.S. at 251-52). If a court, having reviewed the evidence with this standard in mind, concludes that "the evidence is merely colorable . . . or is not significantly probative," then summary judgment may be

5

granted. Anderson, 477 U.S. at 249-50. Finally, while any evidence used to support a motion for summary judgment must be admissible, it is not necessary for it to be in admissible form. See Fed.R.Civ.P. 56(c); Celotex, 477 U.S. at 324; J.F. Feeser, Inc., v. Serv-A-Portion, Inc., 909 F.2d 1524, 1542 (3d Cir. 1990).

C. Analysis

1. Eighth Amendment

Prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care. Estelle v. Gamble, 429 U.S. 97, 104 (1978). In order to succeed on a claim of denial of medical treatment in violation of his Eighth Amendment rights, an inmate must show: (1) that he was suffering from a "serious" medical need; and (2) that the prison officials were "deliberately indifferent" to the serious medical need. Id. With respect to the first element of this standard, a medical need qualifies as "serious" when, for example, "it . . . has been diagnosed by a physician as requiring treatment." Monmouth Cnty Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). A medical need also may be "serious" if it is so obvious that even a layperson would recognize the need for a doctor's attention. Morrison v. Phillips, No. 06-812, 2008 WL 4308215, at *13 (D.N.J. Sept. 16, 2008) (quoting Johnson v. Snyder, 444 F.3d 579, 584-85 (7th Cir. 2006)).

With respect to the second element – deliberate indifference – the Supreme Court has adopted a subjective approach. Farmer v. Brennan 511 U.S. 825, 842 (1994). Farmer teaches that:

> it is enough that the official acted or failed to act despite his
> knowledge of a substantial risk of serious harm. . . . Whether a
> prison official had the requisite knowledge of a substantial risk is a

6

> question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder [sic] may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

Id. at 842 (citations omitted). A showing of knowledge of "a substantial risk of serious harm" under Farmer requires that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. Under this standard, it is not enough that an official merely should have been aware of the risk to an inmate. The official must be "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,'" and then actually "'draw the inference.'" Natale v. Camden Cnty Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) (quoting Farmer, 511 U.S. at 837). The United States Court of Appeals for the Third Circuit has held that this standard may be met in several scenarios, including "when a doctor is intentionally inflicting pain on [a] prisoner," and when the denial of "reasonable requests for medical treatment . . . exposes the inmate to undue suffering[.]" Spruill, 372 F.3d at 235 (internal quotation marks and citations omitted). This standard is also met when "a prison official . . . knows of a prisoner's need for medical treatment but intentionally refuses to provide it" or "delays necessary medical treatment based on a nonmedical reason." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). However, acts that would rise only to the level of medical malpractice, or mere disagreement over a course of treatment, are not violations of the Eighth Amendment. Spruill, 372 F.3d at 235.

Moreover, "prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." Farmer, 511 U.S. at 845. Additionally, once a prisoner is under a physician's care, a non-medical prison official cannot be considered to be deliberately

7

indifferent merely for failure to respond to a prisoner's medical complaints. Spruill, 372 F.3d at 236 (citing Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993)). "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." Spruill, 372 F.3d at 236.

It is undisputed that Plaintiff contacted Defendants Kino and Comiskey at or around 12:15 AM on December 28, 2008, regarding his eye injury. Additionally, it is undisputed that the existence of Plaintiff's injury – if not its exact nature – was apparent to these Defendants. Defendant Kino avers to having informed the nurse on call that there was definitely something wrong with Plaintiff's eye. (Doc. 45-1) at 3. Defendant Comiskey avers that Plaintiff "was holding his hand over his eye and it looked swollen[,]" and that he appeared "messed up." Id. at 5.

It is also undisputed that prison medical personnel were contacted in response to Plaintiff's injury shortly after Defendants Kino and Comiskey examined Plaintiff. These Defendants described Plaintiff's injury to the nurse on call and relied on his assessment regarding its severity, and whether it was safe to allow treatment to wait until morning. They also contacted their superior, Defendant Longstreth, who also relied upon the assessment of the on-duty nurse. As the record shows, Plaintiff described his pain that morning as a five out of ten, and that afternoon as "mild[.]" See (Doc. 45-2) at 8, 23. Given the apparent (and actual) non-life-threatening nature of the injury, Plaintiff has adduced no evidence that would allow a reasonable trier of fact to conclude that Defendants Kino, Comiskey, and Longstreth would have any reason to question the nurse's instructions. This conclusion is only bolstered by the availability of treatment later that day, which it is undisputed that Plaintiff actually received. As

such, Plaintiff cannot satisfy the deliberate indifference element with respect to these Defendants. Spruill, 372 F.3d at 236

Additionally, the general rule in Eighth Amendment jurisprudence is that "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference which results in . . . harm." Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993). This is the rule in the Third Circuit. Cooper v. Diggs, No. 07-1557, 2010 WL 2331067, at *4 (W.D.Pa. June 4, 2010) (Hay, C.Mag.J.) (citing Brooks v. Kyler, 204 F.3d 102, 105 n.4 (3d Cir. 2000) ("the prisoner-plaintiff 'presented no evidence of any harm resulting from a delay in medical treatment'")). Defendants argue that Plaintiff has adduced no evidence that the delay in treatment that he experienced has led to substantial harm that was suffered in addition to Plaintiff's initial injury. (Doc. 44) at 14. Indeed, the medical records that were submitted as exhibits to this civil action – by both Plaintiff and Defendants – support this conclusion. See generally (Doc. 45-2) at 23 – 35; see also (Doc. 48-10) at 2 – 29. There is absolutely no evidence on the record that indicates that Plaintiff has suffered any ill effects due to the roughly seven hours he was made to wait before he was examined by a nurse, or the 14 and one-half hours he waited before he was admitted to UPMC.

Plaintiff responds to this argument that, even in the absence of any exacerbation to his injury, the pain that he experienced during the delay should be enough to meet the standard for a violation of the Eighth Amendment. (Doc. 48) at 4. It is true that persistent, severe pain is recognized to qualify as a serious medical need. Cabello v. Grace, No. 1:CV-08-1334, 2011 WL 902340, at *11 (M.D.Pa. Mar. 15, 2011). However, the record before this Court does not support Plaintiff's contention that the pain that he suffered as a result of his wait to see medical personnel could be properly characterized as "severe." First, the record contains evidence showing that,

9

when Plaintiff was examined by a nurse at about 7:30 AM on December 28, 2008, he described his pain as being a five on a scale of one to ten. (Doc. 45-2) at 8. Second, Plaintiff's medical records indicate that, after his transfer to the emergency room, the pain that he experienced was "mild." Id. at 23. Indeed, when he was discharged from UPMC on the date of his injury, Plaintiff was prescribed 400 milligram tablets of Motrin to treat his pain.[6] Id. at 40. Furthermore, Defendants Kino and Comiskey have presented averments that Plaintiff did not appear to be in "agony" when they examined him, thus casting doubt on whether his pain was objectively severe enough to qualify, in and of itself, as a severe medical need, as well as to whether they possessed the subjective state of mind necessary to liable under the Eighth Amendment. Finally, as stated above, these Defendants, as well as Defendant Longstreth, relied on the assessment of Plaintiff's injury made by a medical professional. Even when viewed in the light most favorable to Plaintiff, the evidence on the record does not create a genuine issue of fact as to whether the actions or inactions of Defendants Kino, Comiskey, and Longstreth violated Plaintiff's rights under the Eighth Amendment. Accordingly, summary judgment should be granted in their favor.

2. Personal Involvement of Defendants Beard and Tretinik

Supervisory liability may not be premised solely upon a theory of *respondeat superior*. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, some personal involvement of the supervising official must be alleged. Id. Supervisory liability for Section 1983 violations

---

[6] Plaintiff argues that he was prescribed Vicodin as well on December 28, 2008. (Doc. 48-5) at 4, 27. There is no evidence on the record to support this assertion. Indeed, the record indicates that Plaintiff was prescribed only Motrin on December 28, 2008. See e.g., (Doc. 42-3) at 4 – 6; see also (Doc. 48-10) at 27 – 29. Even if Plaintiff had been prescribed Vicodin, the record still indicates that, on December 28, 2008, he reported his pain to be "mild."

10

can be established by evidence showing that officials: (1) participated in violating a plaintiff's rights; (2) directed others to violate a plaintiff's rights; (3) knew of, and acquiesced in, their subordinates' violation of a plaintiff's rights; or (4) knew of, and tolerated, past or ongoing misbehavior. Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 & n.3 (3d Cir. 1995).

Plaintiff does not make any factual allegations against Defendant Beard in his amended complaint. Indeed, it appears that this individual was named by Plaintiff merely as an afterthought. Given the utter lack of factual allegations against Defendant Beard, Plaintiff has failed to raise even the specter of a facially plausible right to relief against him. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Furthermore, it is clear from the face of the complaint that leave to amend would be futile. Cf. Arrango v. Winstead, 352 F.App'x 664, 666 (3d Cir. 2009) (noting that the district court's refusal to grant leave to amend was proper given that no facts were alleged from which the court could infer that the plaintiff was denied a constitutional right, and plaintiff had failed to respond when this issue was raised in a motion to dismiss). All claims against Defendant Beard should be dismissed with prejudice.

In his amended complaint, Plaintiff alleges that Defendant Tretinik was the physician who ordered that he be sent to UPMC at approximately 11:40 AM on December 28, 2008. (Doc. 29) at 6. Defendant Tretinik responds to this assertion with an unsworn declaration, in which he indicates (1) that he is not a physician and does not provide medical care to inmates; (2) he was not at SCI-Fayette on December 28, 2008, which was a Sunday; and (3) the only knowledge that he has of Plaintiff's eye injury was what he learned from reviewing a medical chart while preparing a response to Plaintiff's administrative grievance concerning the incident. Ex. 7 to Def.s' Concise Statement of Material Facts (Doc. 45-3) ¶¶ 3 – 4. Defendant Tretinik argues that he is named as a Defendant purely by mistake. Id. ¶ 2. Plaintiff does not address Defendant

Tretinik's arguments in his response to the motion for summary judgment. (Docs. 47 – 48). Indeed, an exhibit to this response was a copy of Defendant Tretinik's declaration that contains Plaintiff's handwritten notes. Ex A6 to Pl.'s Response to Def.s' Mot. for Summ. J. (Doc. 48-6) at 2 – 3. While Plaintiff emphasizes portions of the declaration that indicate that he was sent to the emergency room for his injury, and that the incident occurred on a Sunday, he does not respond to Defendant Tretinik's evidence indicating that he was named by mistake. As such, Plaintiff has failed to meet his Celotex burden to show personal involvement on the part of Defendant Tretinik, and, consequently, summary judgment should be granted in his favor.

### 3. Unnamed Defendants

"Fictitious parties may be used 'at least until reasonable discovery permits the actual defendants to assume their places.'" Atlantic Used Auto Parts v. City of Phila., 957 F.Supp. 622, 625 (E.D.Pa 1997) (quoting Klinger v. Yamaha Motor Corp. USA, 738 F.Supp. 898, 910 (E.D.Pa. 1990). However, these Defendants must be dismissed if discovery does not yield their identities. Brown v. New Hanover Tp. Police Dept. No. 07-2776, 2008 WL 4306760, at *6 (E.D.Pa. Sept. 19, 2008) (citing Scheetz v. Morning Call, Inc., 130 F.R.D. 34, 37 (E.D.Pa. 1990)). Additionally, Rule 21 of the Federal Rules of Civil Procedure allows a court to dismiss, *sua sponte*, parties on just terms at any point during a proceeding. See Fed.R.Civ.P. 21; see also, K.K. ex rel Knowles v. Weeks, No. 1:CV-04-2290, 2007 WL 1455888, at *5 (M.D.Pa. May 15, 2007). District Courts in this circuit have used this Rule to dismiss John Doe parties from civil actions. Weeks, 2007 WL 1455888, at *5.

Plaintiff has listed two John Doe nurses as Defendants to this action. Despite the pendency of this suit since June 22, 2009, Plaintiff has never moved to name these Defendants.

Plaintiff has been given ample opportunity to inquire of the known Defendants the names of the two John Doe nurses. The docket shows that the named Defendants executed waivers of service on September 14, 2009 (Docs. 14 – 19), and discovery did not close until August 23, 2010. (Doc. 39). Additionally, Defendants explicitly mentioned this issue on September 19, 2010, in their response to Plaintiff's summary judgment motion. (Doc. 46) at 2. As of the date of this writing, Plaintiff has made no attempt to name these Defendants, nor has he ever notified this Court that the named Defendants have refused to provide their names. Accordingly, the Doe defendants should be dismissed.

        4.   <u>Plaintiff's Motion for Judgment on the Pleadings</u>

Plaintiff has filed what he characterizes as a motion for judgment on the pleadings. (Doc. 54). This appears, on its face, to be nothing more than a motion for the Court to rule favorably on his earlier-filed motion for summary judgment. In light of the above analysis, this motion should be denied as moot.

## III. **CONCLUSION**

For the reasons stated above, it is respectfully recommended that Defendants' motion for summary judgment (Doc. 43) be granted, and Plaintiff's motion for summary judgment (Doc. 41) be denied. It is further recommended that the John Doe Defendants be dismissed. Finally, it is recommended that Plaintiff's motion for judgment on the pleadings (Doc. 54) be denied as moot.

In accordance with the Magistrates Act, 20 U.S.C. § 636(b)(1) (B) and (C), and Rule 72.D.2 of the Local Rules for Magistrates, objections to this report and

recommendation must be filed by June 17, 2011.  Failure to file objections will waive the right to appeal.  Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

Dated: June 3, 2011                                             s/Cathy Bissoon
                                                                       CATHY BISSOON
                                                                        UNITED STATES MAGISTRATE JUDGE


cc:
**NICHOLAS AMBUSH**
HJ5902
Box 9999
SCI FAYETTE
LaBelle, PA 15450